**NO. 19-1671**

---

**IN THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

---

**VIRNETX INC.,**
***Appellant***

**v.**

**CISCO SYSTEMS, INC.,**
***Appellee***

**KATHERINE K. VIDAL, Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office,**
***Intervenor***

---

# BRIEF OF APPELLEE CISCO SYSTEMS, INC.

---

**Appeal from the U.S. Patent and Trademark Office Patent Trial and Appeal Board in No. 95/001,679**

---

David L. McCombs
Debra J. McComas
Theodore M. Foster
**HAYNES AND BOONE, LLP**
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Phone: (214) 651-5533
Fax: (972) 692-9116
*David.McCombs@haynesboone.com*
*Debbie.McComas@haynesboone.com*
*Theo.Foster@haynesboone.com*

**Attorneys for Appellee Cisco Systems, Inc.**

**U.S. Patent No. 6,502,135, Claim 1 (Appx109)**

1. A method of transparently creating a virtual private network (VPN) between a client computer and a target computer, comprising the steps of:

(1) generating from the client computer a Domain Name Service (DNS) request that requests an IP address corresponding to a domain name associated with the target computer;

(2) determining whether the DNS request transmitted in step (1) is requesting access to a secure web site; and

(3) in response to determining that the DNS request in step (2) is requesting access to a secure target web site, automatically initiating the VPN between the client computer and the target computer.

# CERTIFICATE OF INTEREST

**Case Number** 19-1671

**Short Case Caption** VirnetX Inc. v. Cisco Systems, Inc.

**Filing Party/Entity** Cisco Systems, Inc. / Appellee

**Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box**. Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: September 2, 2022 Signature: */s/ David L. McCombs*

Name: David L. McCombs

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. |
| __ None/Not Applicable | X None/Not Applicable | X None/Not Applicable |
| Cisco Systems, Inc. | | |

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

__ None/Not Applicable __ Additional pages attached

| | | |
|---|---|---|
| Andrew S. Ehmke<br>Haynes and Boone, LLP | | |
| | | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

__ None/Not Applicable __ Additional pages attached

| | | |
|---|---|---|
| VirnetX Inc. v. Mangrove Partners Master Fund, Ltd., No. 20-2271 | VirnetX Inc. v. Apple Inc., No. 21-1672 | VirnetX Inc. v. Apple Inc., No. 22-1523 |
| | | |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

_X_ None/Not Applicable __ Additional pages attached

| | | |
|---|---|---|
| | | |

# TABLE OF CONTENTS

U.S. Patent No. 6,502,135, Claim 1 (Appx109) ..... i

CERTIFICATE OF INTEREST ..... ii

TABLE OF AUTHORITIES ..... vi

STATEMENT OF RELATED CASES ..... 1

JURISDICTIONAL STATEMENT ..... 2

INTRODUCTION ..... 2

STATEMENT OF THE ISSUES ..... 2

STATEMENT OF THE CASE ..... 3

A. The ’135 patent discloses methods for communicating between computers through a virtual private network. ..... 3

B. The prior art also discloses methods for communicating between computers through a virtual private network. ..... 5

1. Kiuchi ..... 5

2. Solana ..... 6

C. Procedural Background ..... 8

SUMMARY OF THE ARGUMENT ..... 12

ARGUMENT ..... 14

I. Standard of Review ..... 14

II. VirnetX waived the issues it asserts on appeal by failing to raise them on rehearing. ..... 15

III. The Board’s affirmation of the anticipation rejections based on Kiuchi is supported by substantial evidence. ..... 16

A. The *Mangrove* decision does not govern the outcome of this case. ....16

B. The Board fully considered and correctly rejected VirnetX's argument that claim 1's "client computer" must be a "user's computer." ....19

C. The Board correctly determined that Kiuchi's client-side proxy is a "client computer." ....23

D. Substantial evidence supports that Kiuchi's server-side proxy is a "target computer." ....24

E. The Board correctly determined that Kiuchi teaches "direct communication" between the client-side and server-side proxies. ....28

IV. The Board's affirmation of the obviousness rejections based on Solana and Kiuchi is supported by substantial evidence. ....30

A. Substantial evidence supports the obviousness of the "determining" step. ....31

B. VirnetX was not denied an opportunity to challenge the Board's Solana-Kiuchi analysis. ....32

C. Substantial evidence supports combining Solana and Kiuchi. ....32

V. If the Board is not affirmed, this case must be remanded for consideration of the additional claim rejections adopted by the examiner. ....34

VI. The review below comports with *Arthrex*, the Appointments Clause, and the Federal Vacancies Reform Act. ....36

CONCLUSION ....36

CERTIFICATE OF COMPLIANCE ....38

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allied Erecting & Dismantling Co. v. Genesis Attachments, LLC*,
825 F.3d 1373 (Fed. Cir. 2016) ....................34

*Arthrex, Inc. v. Smith & Nephew, Inc.*,
35 F.4th 1328 (Fed. Cir. 2022) ....................2, 36

*Arthrex, Inc. v. Smith & Nephew, Inc.*,
941 F.3d 1320 (Fed. Cir. 2019) ....................11

*Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*,
616 F.3d 1249 (Fed. Cir. 2010) ....................26

*Blackbird Tech LLC v. ELB Elecs., Inc.*,
895 F.3d 1374 (Fed. Cir. 2018) ....................20

*Consol. Edison Co. v. NLRB*,
305 U.S. 197 (1938)....................14

*In re CSB-Sys. Int'l, Inc.*,
832 F.3d 1335 (Fed. Cir. 2016) ....................14

*Eko Brands, LLC v. Adrian Rivera Maynez Enterprises, Inc.*,
946 F.3d 1367 (Fed. Cir. 2020) ....................23

*FTC v. Raladam Co.*,
316 U.S. 149 (1942)....................16

*In re Google Tech. Holdings LLC*,
980 F.3d 858 (Fed. Cir. 2020) ....................15

*Homeland Housewares, LLC v. Whirlpool Corp.*,
865 F.3d 1372 (Fed. Cir. 2017) ....................20

*Hytera Commc'ns Co. v. Motorola Sols., Inc.*,
841 F. App'x 210 (Fed. Cir. Jan. 19, 2021)....................18

*Knowles Elecs. LLC v. Iancu*,
886 F.3d 1369 (Fed. Cir. 2018) ....................14, 15

*Mendenhall v. Cedarapids, Inc.*,
5 F.3d 1557 (Fed. Cir. 1993) ....................17

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) (en banc) ....................14

*Polycom, Inc. v. Fullview, Inc.*,
767 F. App'x 970 (Fed. Cir. 2019) ....................15, 16

*Power Integrations, Inc. v. Lee*,
797 F.3d 1318 (Fed. Cir. 2015) ....................14

*Skyhawke Techs., LLC v. Deca Int'l Corp.*,
828 F.3d 1373 (Fed. Cir. 2016) ....................24

*In re Swanson*,
540 F.3d 1368 (Fed. Cir. 2008) ....................17

*Synopsys, Inc. v. Mentor Graphics Corp.*,
814 F.3d 1309 (Fed. Cir. 2016), *overruled on other grounds*, *Aqua Prods., Inc. v. Matal*, 872 F.3d 1290 (Fed. Cir. 2017) (en banc) ....................33

*Thorner v. Sony Comput. Ent. Am., LLC*,
669 F.3d 1362 (Fed. Cir. 2012) ....................20

*Trading Techs. Int'l, Inc. v. IBG LLC*,
921 F.3d 1084 (Fed. Cir. 2019) ....................17

*United States v. Arthrex, Inc.*
141 S. Ct. 1970 (2021) ....................1, 11

*VirnetX Inc. v. Mangrove Partners Master Fund, Ltd.*,
778 F. App'x 897 (Fed. Cir. 2019) ....................*passim*

*Yeda Research & Dev. Co. v. Mylan Pharms. Inc.*,
906 F.3d 1031 (Fed. Cir. 2018) ....................33

**Statutes**

35 U.S.C. § 154 ....................11

**Other Authorities**

37 C.F.R. § 41.37 ....................33

37 C.F.R. § 41.50 ....................................................................................... 32

37 C.F.R. § 41.79 ....................................................................................... 15

## STATEMENT OF RELATED CASES

In accordance with Federal Circuit Rule 47.5(a) Cisco respectfully submits that this appeal returns to the Court after a remand for Director Review pursuant to the United States Supreme Court's decision in *United States v. Arthrex, Inc.* 141 S. Ct. 1970 (2021). *See* Doc. 63. The remand order was issued by Chief Judge Moore and Circuit Judges Chen and O'Malley. Doc. 63. This Court retained jurisdiction over the appeal pending Director review, so there is no separate appeal "from the same civil action or proceeding in the lower court or body." Fed. Cir. R. 47.5(a). This appeal retained its appeal number, and the merits have yet to be addressed.

In accordance with Federal Circuit Rule 47.5(b) Cisco respectfully submits that the following cases involving the same patent claims at issue in this appeal are known to counsel to be pending in any court:

- *VirnetX Inc. v. Mangrove Partners Master Fund*, 20-2271 (CAFC)
- *VirnetX Inc. v. Apple Inc.*, 22-1523 (CAFC)
- *VirnetX Inc. v. Apple Inc.*, 21-1672 (CAFC)

VirnetX provides a selective procedural history of other challenges related to the '135 patent in the above appeals (as well as certain past appeals or district court actions). Most of this history has nothing to do with the issues on appeal here. To the extent they are relevant, Cisco discusses these other proceedings below.

## JURISDICTIONAL STATEMENT

Cisco does not dispute VirnetX's jurisdictional statement.

## INTRODUCTION

It is telling that VirnetX's brief—from the Statement of the Related Case on—emphasizes what happened in other cases involving other parties and different evidence, while de-emphasizing the record before the Board in this *inter partes* reexamination. Indeed, by resting its appeal on what happened in other cases, VirnetX largely ignores its own procedural infirmities below, makes new arguments it failed to properly raise to the Board in *this* reexamination proceeding, and disregards the unique substantial evidence relied upon by the Board in this case that supports the Board's findings of unpatentability. Looking to the record evidence and arguments before the Board in *this inter partes* reexamination, the Board's unpatentability conclusions are supported by substantial evidence and should, therefore, be affirmed.

## STATEMENT OF THE ISSUES

1. Did VirnetX forfeit the arguments it now seeks to raise on appeal by failing to challenge all bases for the Board's decision on rehearing?
2. Does substantial evidence support the Board's determination of unpatentability of claims 1-9 and 18?
3. Consistent with this Court's ruling in *Arthrex, Inc. v. Smith & Nephew, Inc.*, 35 F.4th 1328 (Fed. Cir. 2022), did the Director's review of VirnetX's appeal

of the *inter partes* reexamination comport with the Appointments Clause and the Federal Vacancies Reform Act of 1998?

## STATEMENT OF THE CASE

This appeal arises from an *inter partes* reexamination in which claims 1-9 and 13-18 of U.S. Patent No. 6,502,135 were found unpatentable as either anticipated or obvious. VirnetX does not appeal the Board's decision as to claims 13-17. VirnetX Br. 20 n.2. With respect to claims 1-9 and 18, VirnetX narrows its challenge on appeal to the Board's treatment of two prior art references: Kiuchi and Solana. Cisco, accordingly, limits the Statement of the Case to the issues identified on appeal.

### A. The '135 patent discloses methods for communicating between computers through a virtual private network.

The relevant independent claims (claims 1 and 18) of the '135 patent describe a method for establishing communications between two computers over the internet through a virtual private network ("VPN"). *See generally* Appx86-87 (providing a "Summary of the Invention"), Appx109 (claim 1, 47:20-32). As reflected immediately below, Fig. 26 of the '135 patent illustrates a "system employing a DNS proxy server with transparent VPN creation" [Appx79, Appx89, 7:19-20] and Fig. 27 "shows steps that can be carried out to implement transparent VPN creation based on a DNS look-up function." Appx89, 7:21-22.



FIG. 26



FIG. 27

Independent claim 1 is representative and recites:

> 1. A method transparently creating a virtual private network (VPN) between a client computer and a target computer, comprising the steps of:
>
> (1) generating from the client computer a Domain Name Service (DNS) request that requests an IP address corresponding to a domain name associated with the target computer;
>
> (2) determining whether the DNS request transmitted in step (1) is requesting access to a secure web site; and
>
> (3) in response to determining that the DNS request in step (2) is requesting access to a secure target web site, automatically initiating the VPN between the client computer and the target computer.

Appx109, 47:20-32. Claims 2-8 depend to claim 1. Appx109, 47:33-64. Claim 9 further depends to claim 5. Appx109, 47:65-48:2. Independent claim 18 was added to the ’135 patent in response to a prior *inter partes* reexamination that concluded

with a reexamination certificate on June 7, 2011. Appx120. There is no reference in any of the claims to a "user's computer." Nor do any of the claims recite that computers communicate "directly" with each other via the virtual private network.

VirnetX suggests in its opening brief that it disclaimed "any VPN that does not require direct communication" during prosecution. *See* VirnetX Br. 8. But it is telling that VirnetX cites solely to the findings in a separate case involving different parties and a different record in support of this position. *Id.* at 8-9 (citing *VirnetX Inc. v. Mangrove Partners Master Fund, Ltd.*, 778 F. App'x 897, 910 (Fed. Cir. 2019)). Here, VirnetX failed to present any evidence before the examiner of such a disclaimer.

### B. The prior art also discloses methods for communicating between computers through a virtual private network.

#### 1. Kiuchi

Similar to the '135 patent, "C-HTTP-The Development of a Secure, Closed HTTP-based Network on the Internet" by Takahiro Kiuchi and Shigekoto Kaihara ("Kiuchi") describes establishing secure network links between different hosts on the internet. Appx4387. The authors sought to develop a secure network for sharing sensitive medical information between different institutions. Appx4387. To achieve this goal, Kiuchi describes a system with "a client-side proxy, a server-side proxy and a C-HTTP name server." Appx4387 (Kiuchi, Abstract).

Kiuchi's "client-side proxy" serves the same function and has the same features as the "client computer" disclosed in the challenged claims of the '135 patent. Specifically, Kiuchi teaches that the secure, encrypted connection is initiated in response to a request for an IP address sent to a name server, explaining:

> A client-side proxy asks the C-HTTP name server whether it can communicate with the host specified in a given URL . . . . If the connection is permitted, the C-HTTP name server sends the IP address and public key of the server-side proxy and both request and response Nonce values . . . . When the C-HTTP name server confirms that the specified server-side proxy is an appropriate closed network member, *a client-side proxy sends a request for connection to the server-side proxy, which is encrypted* using the server-side proxy's public key . . . .

Appx4388 (Kiuchi) (emphasis added). In short, Kiuchi's client-side proxy (client computer) communicates directly with the server-side proxy (target computer). Appx4387 (Kiuchi, Abstract), Appx4388 (Kiuchi); *see* Appx4870-4872 (claim chart supporting *inter partes* reexamination request). This encrypted communication link forms a virtual private network between the two computers. *See* Appx4870.

2. **Solana**

"Flexible Internet Secure Transactions Based on Collaborative Domains" by Eduardo Solana and Jürgen Harms ("Solana") was published at the Security Protocols Workshop in 1997. Appx344, Appx4423-4437. Solana takes a more global view of network security, suggesting using a global Directory Service (DS) built using existing domain name service (DNS) technology to securely exchange cryptographic keys for secure communications. Appx4423. Fig. 1 of Solana (copied

below) shows the DNS-based Directory Service (DS), along with the secured and encrypted channels:




*Fig. 1: Collaborative Domains Architecture*

Appx4429.

Solana teaches establishing a VPN based on a DNS request for an IP address. Specifically, Solana teaches using a request to the DNS-based Directory Service (DS) to obtain the encryption keys required for virtual private network communications:

> The initiator generates the same header as in the precedent case (Session Key + responder UNI) and then issues a DS query to obtain the destination domain public key for header encryption. Finally, the whole packet together with the decryption information is submitted directly to the responder.

Appx4432.

Solana suggests building the DS on top of the existing DNS architecture, which was used for obtaining IP addresses. Thus, a "DS query" is a DNS request as recited in the '135 patent claims. Solana also teaches automatically generating a VPN in response to this request, since encryption and other services are "transparently" provided:

> Inter-domain confidentiality. The source DBS [Domain Border System] acts as encryptor for the outgoing transactions, using the public key (obtained from the DS) of the destination domain(s) . . . . The functionality offered by the DBS in this scheme is often known as secure gatewaying. The main advantage of inter-domain confidentiality lies in the fact that services may be provided transparently to the parties involved in the transaction.

Appx4430-4431. Solana's transparently encrypted transactions form a virtual private network.

### C. **Procedural Background**

In response to Cisco's request for *inter partes* reexamination, the examiner rejected claims 1-9 and 13-18 of the '135 patent over numerous prior art combinations. Appx1321-1323, Appx1906-1909. The grounds for the examiner's rejection are outlined in the following chart. On appeal, the Patent Trial and Appeal Board affirmed the examiner's rejection of the disputed claims based on Kiuchi

alone or in combination with one or more prior art references. *See* Appx28-30. The specific grounds for the Board's rulings are bolded in the chart. The Board did not reach the numerous alternative (unbolded) grounds supporting the examiner's rejection. Appx29.

| CLAIM | GROUNDS FOR REJECTION |
|---|---|
| 1-4, 7 | • **Anticipated by Kiuchi**<br>• Anticipated by Wesinger<br>• **Obvious over Solana in view of Kiuchi**<br>• Anticipated by Aziz |
| 5, 8 | • Obvious over Kiuchi in view of Dalton<br>• Anticipated by Wesinger<br>• **Obvious over Solana in view of Kiuchi**<br>• **Obvious over Solana in view of Kiuchi, and further in view of Dalton**<br>• Anticipated by Aziz<br>• Obvious over Aziz in view of Dalton |
| 6 | • **Obvious over Kiuchi in view of Martin**<br>• Obvious over Wesinger in view of Martin<br>• Obvious over Solana in view of Kiuchi, and further in view of Martin<br>• Obvious over Aziz in view of Martin |
| 9 | • **Obvious over Kiuchi in view of Bellovin**<br>• Anticipated by Wesinger<br>• Obvious over Solana in view of Kiuchi, further in view of Dalton, further in view of Bellovin<br>• Obvious over Aziz in view of Bellovin |
| 18 | • Obvious over Kiuchi in view of Dalton<br>• Anticipated by Wesinger<br>• **Obvious over Solana in view of Kiuchi**<br>• **Obvious over Solana in view of Kiuchi, and further in view of Dalton**<br>• Anticipated by Aziz |

In affirming the examiner, the Board rejected a litany of arguments by VirnetX designed to impose additional, unwarranted limitations on common terms such as "client computer" and "virtual private network." *See, e.g.,* Appx16. For example, the Board emphasized in its analysis the absence of the term "user's computer" in the '135 patent. *See* Appx16 ("Even assuming that claim 1 recites a 'user's computer' (**instead of a 'client computer,' which claim 1 actually recites**) . . . Patent Owner does not demonstrate persuasively that the hypothetical **'user's computer' (renamed from 'client computer')** differs from the client-side proxy of Kiuchi . . . .") (emphasis added). The Board also found that VirnetX had failed to show error in the examiner's finding that it would have been obvious to combine Kiuchi with Solana largely because VirnetX had applied the wrong standard for obviousness, imposing an improper requirement that the combination be necessary rather than just obvious. Appx27.

VirnetX sought rehearing from the unfavorable decision solely as to claim 4. Appx2334. The Board rejected VirnetX's argument in part for VirnetX's failure to articulate a reason why claim 4 would be treated differently from the other disputed claims. Appx34-35. The Board further confirmed where in its initial decision it had already addressed VirnetX's argument about claim 4. Appx35-36.

Following the unfavorable ruling on rehearing, VirnetX filed its notice of appeal to this Court. Appx2361. After the case was docketed, this Court issued the

non-precedential decision in *VirnetX Inc. v. Mangrove Partners Master Fund, Ltd.*, 778 F. App'x 897 (Fed. Cir. 2019). In *Mangrove,* this Court considered the same patent claims and the Kiuchi reference based on different arguments and different reasoning by a different Board panel in an *inter partes* review. Specifically, the Court faulted the Board in *Mangrove* for refusing to consider at all VirnetX's proposed claim constructions. *Mangrove*, 778 F. App'x at 910. As a result, the Court remanded that case for further proceedings by the Board. *Id.*

Despite the unique facts of *Mangrove,* the non-precedential nature of the opinion, and the uncertainty of its resolution on remand, VirnetX filed a motion to remand this appeal to the Board for further consideration in light of *Mangrove*. *See* Doc. 19-1. That request was denied by this Court. *See* Doc. 22. Notably, on remand in *Mangrove*, the Board considered VirnetX's claim construction arguments, as the circuit court instructed, and still found the claims unpatentable, a decision that remains on appeal to this Court as Case No. 20-2271.

The '135 patent expired on October 29, 2019. Appx49 (INID code 63); 35 U.S.C. § 154(a)(2).

On November 7, 2019, VirnetX again moved for a remand in light of this Court's decision in *Arthrex, Inc. v. Smith & Nephew, Inc.*, 941 F.3d 1320 (Fed. Cir. 2019), which was granted. Doc. 23; Doc. 45. Following the United States Supreme Court's decision in *United States v. Arthrex, Inc.*, 141 S. Ct. 1970 (2021), the Court

vacated its remand order and reinstated the appeal. Doc. 57. The Court then ordered a limited remand to allow VirnetX the opportunity to seek Director review. Doc. 63. On January 10, 2022, the director denied review (Appx39-42), and the appeal was once again reinstated. Doc. 66.

## SUMMARY OF THE ARGUMENT

This appeal is ripe for summary affirmance because appellant VirnetX failed to preserve below any of the arguments it raises here. When VirnetX requested rehearing before the Board, it identified only one alleged error regarding claim 4 in the Board's decision. VirnetX abandoned that issue in its opening brief here. Thus, there is nothing for this Court to review on appeal.

Even if this Court looks past VirnetX's waiver, there is no merit to its arguments on appeal. VirnetX's lengthy digressions to discussing a previous nonprecedential decision— *VirnetX Inc. v. Mangrove Partners Master Fund, Ltd.*, 778 F. App'x 897 (Fed. Cir. 2019)—are not worthwhile because that case involved a different proceeding with different facts, different arguments, and a different record. Here, the Board correctly rejected VirnetX's attempt to read a "user" or "user's computer" limitation into claim 1, which uses the more general term "client computer." Notably, the specification uses a wide variety of terms for that device, and even the example scenarios that VirnetX directs this Court to use the term

"client." There is no basis for redefining the claimed "client computer" to be a "user's computer."

The Board also correctly rejected VirnetX's strawman analysis of the claimed "client computer" and "target computer." The examiner's analysis—which the Board affirmed—mapped these components to the prior art's "client-side proxy" and "server-side proxy." VirnetX argues that the prior art could be distinguished if the "client computer" or "target computer" were mapped to other components in Kiuchi, but VirnetX is not entitled to respond to a claim rejection of its own devising. VirnetX fails to show any error *in the adopted and affirmed rejection analysis*. Relatedly, VirnetX presents no argument that the prior art, as analyzed and applied in the adopted rejection, teaches "direct communication" between the client and target computers.

VirnetX's arguments regarding the Solana-Kiuchi combination are similarly unavailing. VirnetX complains that the Board could have said more about the "determining" step but fails to identify any actual error. And had the Board said more, it would have merely pointed out—as Cisco and the examiner had—that VirnetX itself argued in district court that nothing in the claim limited which computer performed the "determining" step, and hence VirnetX's attempted distinction was illusory. The Board's affirmance of the Solana-Kiuchi rejections was also not a new ground, and even if it had been, VirnetX was not denied an

opportunity to address that issue. To the contrary, VirnetX sought rehearing of the Board's decision but did not raise any complaint about an alleged new ground of rejection.

No argument raised by VirnetX warrants any further consideration than it has already received in the decade-plus pendency of this reexamination. This Court should affirm.

## ARGUMENT

### I. Standard of Review

In an appeal from an *inter partes* reexamination, the Board's legal conclusions are reviewed de novo, while its factual findings—including findings to support a conclusion of anticipation or obviousness—are reviewed for substantial evidence. *Knowles Elecs. LLC v. Iancu*, 886 F.3d 1369, 1374 (Fed. Cir. 2018); *Power Integrations, Inc. v. Lee*, 797 F.3d 1318, 1323 (Fed. Cir. 2015). Substantial evidence means "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (citations omitted).

In reexamination, expired claims such as the ones at issue here are construed in accordance with *Phillips v. AWH Corp.*, "which emphasizes considering the plain meaning of the claim terms themselves in light of the intrinsic record." *In re CSB-Sys. Int'l, Inc.*, 832 F.3d 1335, 1340 (Fed. Cir. 2016); *see Phillips v. AWH Corp.*,

415 F.3d 1303, 1312–15 (Fed. Cir. 2005) (en banc). Claim construction based on the intrinsic evidence is ultimately a legal conclusion and is, therefore, reviewed de novo. *Knowles Elecs.*, 886 F.3d at 1374.

## II. VirnetX waived the issues it asserts on appeal by failing to raise them on rehearing.

Following the Board's initial decision on appeal, VirnetX was not obligated to seek rehearing prior to appealing to this Court. But it did. And in requesting rehearing, VirnetX was obligated to "state with particularity the points believed to have been misapprehended or overlooked in rendering the Board's opinion reflecting its decision." 37 C.F.R. § 41.79(b)(1). Relying on this rule, this Court has found that arguments not included in the briefing on rehearing are waived. *See Polycom, Inc. v. Fullview, Inc.*, 767 F. App'x 970, 980 (Fed. Cir. 2019) (finding waiver of arguments omitted from rehearing briefing because "this court should not be put in the position of reviewing an alleged error in the Board's reasoning that the Board itself was not given a chance to address when it considered [patent owner's] other arguments on rehearing.").[1]

[1] Since *Polycom*, this Court has clarified the distinction between waiver (intentional surrender of a right) and forfeiture (the involuntary surrender of a right by the failure to take an action necessary to invoke a right). *See In re Google Tech. Holdings LLC*, 980 F.3d 858, 862 (Fed. Cir. 2020). Here, by taking action to request rehearing and omitting arguments about claims 1-3, 5-9, and 18, VirnetX intentionally waived further review of those claims. Even if VirnetX's actions could be viewed as an unintentional forfeiture, however, the outcome remains the same. *Id*. at 863 ("[A] position not presented in the tribunal under review will not be considered on appeal

Here, VirnetX identified only one alleged error in the Board's decision on rehearing—an argument focused on the alleged uniqueness of claim 4's recitation of "determining whether the client computer is authorized to establish a VPN with the target computer." Appx2334-2335; Appx109. VirnetX does not raise this argument on appeal. Instead, VirnetX's opening appeal brief raises arguments not included in the rehearing briefing below, leaving nothing for this Court to review on appeal. *Id.* Thus, this Court may summarily affirm the Board's decision without reaching the merits of VirnetX's arguments on appeal.

## III. The Board's affirmation of the anticipation rejections based on Kiuchi is supported by substantial evidence.

### A. The *Mangrove* decision does not govern the outcome of this case.

VirnetX's opening brief devotes almost as much time to discussing a previous appeal in another case—*VirnetX Inc. v. Mangrove Partners Master Fund, Ltd.*, 778 F. App'x 897 (Fed. Cir. 2019)—as it does to discussing the facts of the appeal here. But this case involves a different patent challenger and arises "out of different proceedings and present[s] different facts and a different record" than the earlier non-precedential *Mangrove* case. *FTC v. Raladam Co*., 316 U.S. 149, 151 (1942). *Mangrove* is not binding for each of these reasons.

---

in the absence of exceptional circumstances."). Under either principle, the arguments VirnetX now raises—all of which it failed to raise at rehearing—were not preserved for this Court's review.

*First*, as a nonprecedential decision, *Mangrove* is not binding. *See* Fed. Cir. R. 32.1(d) (recognizing that nonprecedential opinions are not "binding"); *see also Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1084, 1095 (Fed. Cir. 2019) ("We are not bound by non-precedential decisions at all . . . .").

*Second*, *Mangrove* and this case arise from different types of proceedings. *Mangrove* is an *inter partes* review; this appeal is from *inter partes* reexamination. *See In re Swanson*, 540 F.3d 1368, 1376-77 (Fed. Cir. 2008) (finding that "the statutory language, legislative history, and different purposes underlying reexamination" support independent invalidity determination despite prior validity finding in district courts).

*Third*, *Mangrove* and this case involve different arguments and a different record. *See Mendenhall v. Cedarapids, Inc.*, 5 F.3d 1557, 1572 (Fed. Cir. 1993) (refusing to apply stare decisis to a defendant not present in prior lawsuit that involved different parties, evidence, arguments, and findings). Many of these differences are addressed in more detail in the following substantive arguments. But examples of the differences between *Mangrove* and this case include the following:

- in this case, Cisco, the examiner, and the Board have all consistently identified Kiuchi's client-side proxy as the claimed "client." Appx4872; Appx1922-1923; Appx2051-2052; Appx16-18. In *Mangrove*, in contrast, the "[t]he Board at different points confusingly relied on Kiuchi's user agent and client-side proxy as corresponding to the claimed 'client….'" *Mangrove*, 778 F. App'x at 907.

- In *Mangrove*, VirnetX presented evidence and arguments regarding the patent's prosecution history that it did not make to the Board in this case.

In any event, and as explained in more detail below, VirnetX overreaches in its view of the breadth of this Court's decision in *Mangrove*. In *Mangrove*, the panel criticized the Board for confusing and inadequate analysis, "at different points confusingly rel[ying] on Kiuchi's user agent and client-side proxy as corresponding to the claimed 'client' and Kiuchi's server-side proxy and origin server as corresponding to the claimed 'secure server.'" *Mangrove*, 778 F. App'x at 907. Accordingly, the Court remanded the case to the Board for proper analysis. *Mangrove,* 778 F. App'x at 910. Notably, on remand, the Board in *Mangrove* still found the challenged patent claims unpatentable (*see* IPR2015-01046, Paper 112, July 14, 2020), a decision currently pending before this Court in Case No. 20-2271.

Thus, to the extent that this Court even needs to reach the merits of VirnetX's arguments—given VirnetX's failure to include these issues in its rehearing request—this Court should give the *Mangrove* decision no more weight than the minimal consideration to which it is entitled as a nonprecedential decision involving a different patent challenger who provided a different invalidity analysis in a different type of proceeding. *Hytera Commc'ns Co. v. Motorola Sols., Inc.*, 841 F. App'x 210, 216 (Fed. Cir. Jan. 19, 2021) ("Our nonprecedential opinions are also not binding."). Rather, this appeal should be decided by reviewing the arguments and evidence that

were before the Board here, without regard to the alternative way that Kiuchi was mapped to the claims in *Mangrove*.

Here, the Board's conclusions regarding Kiuchi are supported by substantial evidence.

### B. The Board fully considered and correctly rejected VirnetX's argument that claim 1's "client computer" must be a "user's computer."

VirnetX accuses the Board of "fail[ing] to consider VirnetX's proposed construction of 'client computer.'" VirnetX Br. 28. This is simply not true. The Board considered VirnetX's proposal at length, and the Board provided detailed reasons for why it was not persuaded—including that VirnetX's proposal would inject a "user" requirement into the claim language without justification:

> *Patent Owner argues that the claimed "client computer" must be a "user's computer"* and that Kiuchi fails to disclose a "user's computer." [Appx2096] App. Br. 10. However, Patent Owner does not explain sufficiently how Kiuchi fails to disclose a "client computer," which claim 1 recites. As the Examiner points out, Kiuchi discloses a client-side proxy that generates a Domain Name Service (DNS) request. Even assuming that claim 1 recites a "user's computer" (instead of a "client computer," which claim 1 actually recites) that generates a Domain Name Service (DNS) request, as Patent Owner appears to allege, Patent Owner does not demonstrate persuasively that the hypothetical "user's computer" (renamed from "client computer") differs from the client-side proxy of Kiuchi, which also generates a Domain Name Service (DNS) request. See e.g., [Appx4387-4388] Kiuchi 64-65.
>
> * * *
>
> In other words, Patent Owner argues that Kiuchi discloses that the "client-side proxy" "has no end-user" and fails to disclose that the

> "client-side proxy" is "where an end-user sits." Claim 1 recites "generating from the client computer a Domain Name Service (DNS) request. Claim 1 does not also recite that the client computer must have an "end-user" or that the client computer must be "where an end-user sits." Indeed, claim 1 does not recite an "end-user" at all. For at least this reason, *we are not persuaded by Patent Owner's argument*.

Appx16-17 (emphasis added).

The Board rejected VirnetX's arguments by properly focusing on the language of claim 1. "The claim construction inquiry begins and ends in all cases with the actual words of the claim." *Homeland Housewares, LLC v. Whirlpool Corp.*, 865 F.3d 1372, 1375 (Fed. Cir. 2017) (alterations and citations omitted). VirnetX does not dispute the Board's observation that "claim 1 does not recite an 'end-user' at all." Appx17.

VirnetX argues for limiting claim 1 to require a "user's computer" based on occasional references to a "user's computer" in the patent specification's description of Figure 26. VirnetX Br. 31-32. But the mere fact that the description of Figure 26 refers to a "user's computer 2601" that performs steps similar to those recited in claim 1 *does not mean* that the scope of claim 1 must be limited to a "user's computer." It is axiomatic that one should not read limitations from the specification into the claims. *Blackbird Tech LLC v. ELB Elecs., Inc.*, 895 F.3d 1374, 1377-78 (Fed. Cir. 2018). That axiom holds even when "the only embodiments, or all of the embodiments, contain a particular limitation." *Thorner v. Sony Comput. Ent. Am., LLC*, 669 F.3d 1362, 1366 (Fed. Cir. 2012).

And even with respect to the specific disclosure of Figure 26—whose description VirnetX relies upon (VirnetX Br. 31-32)—the specification describes scenarios that *never* refer to a user at all. Instead, the scenarios uniformly refer to a generic "client." Appx105, 39:42-40:13. VirnetX offers no analysis or reasoning to support excluding from the claims every example scenario provided in the specification for Figure 26.

VirnetX's proposed claim construction is further undermined by the wide variety of language used in the '135 specification to describe devices participating in a VPN that are not a user's computer. For example, regarding the "TARP VPN embodiment" relied upon by VirnetX (VirnetX Br. 32, 8), the specification refers generically to a "server or terminal participating in the TARP system." Appx87, 4:61-62. The specification's reference to a "server or terminal" does not support VirnetX's argument that claim 1 should be limited to a "user's computer." Elsewhere, the specification uses a wide variety of names to refer to entities that are an origination point for encrypted, secure, or VPN communications, and thus, that would potentially overlap with or potentially correspond to the claimed "client computer":

- "notebook computers" (Appx88, 5:10),
- "authorized computers" (Appx90, 9:17),
- "originating terminal" (Appx90, 10:67),

- “TARP Transceiver” (Appx91, 11:1),
- “TARP terminals” (Appx91, 11:44),
- “computers” (Appx91, 11:48),
- “host” (Appx91, 11:51),
- “nodes such as TARP nodes” (Appx92, 14:64-65),
- “client” (Appx93, 15:34),
- “client computer” (Appx93, 16:16),
- “device” (Appx94, 18:9),
- “end point” (Appx94, 18:9),
- “machines” (Appx95, 20:6),
- “hardware node” (Appx95, 19:23),
- “computer nodes” (Appx95, 19:37),
- “sending node” (Appx97, 24:8),
- “sender” (Appx97, 24:40),
- “communicants” (Appx98, 25:4),
- “transmitter” (Appx98, 26:48),
- “first computer” (Appx101, 31:59),
- “user’s computer” (Appx104, 38:15),
- “first host computer” (Appx105, 40:28), and
- “low-bandwidth node” (Appx106, 41:19).

VirnetX's argument is analogous to the arguments this Court rejected in *Eko Brands, LLC v. Adrian Rivera Maynez Enterprises, Inc.*, 946 F.3d 1367 (Fed. Cir. 2020). There, the dispute was over whether a claimed "brewing chamber" (for a beverage such as coffee) had to be enclosed. The patent owner argued that "passages of the patent specification [] describe specific embodiments that have fully-enclosed structures." *Eko*, 946 F.3d at 1373. This Court declined to require an enclosed "brewing chamber" because there were "other embodiments in the specification, which clearly show[ed] that a 'brewing chamber' is not fully enclosed." *Eko*, 946 F.3d at 1373. Here, the specification provides a variety of examples of VPNs extending from devices *other than* a user's computer. The Board correctly rejected VirnetX's proposed construction, and this Court should affirm.

### C. The Board correctly determined that Kiuchi's client-side proxy is a "client computer."

The Board affirmed the examiner's mapping of Kiuchi's client-side proxy to the claimed "client computer." Appx16-17. That conclusion is supported by substantial evidence.

First, Kiuchi's client-side proxy performs the only step recited in claim 1 for the claimed "client computer," namely, "generating from the client computer a Domain Name Service (DNS) request." Appx17. Kiuchi describes how the "client-side proxy asks the C-HTTP name server whether it can communicate with the host specified in a given URL." Appx4388; *see* Appx 4872-4876. That request to a name

server is a "Domain Name Service (DNS) request" generated by the client-side proxy.

Second, as the examiner explained, the client-side proxy "serves the client-side," and therefore the client-side proxy is "a computer for a client." Appx2051. VirnetX does not dispute that the client-side proxy is a computer, nor does VirnetX dispute that the client-side proxy serves the client-side. *See* VirnetX Br. 33 (asking only for a remand on claim construction).

Thus, under the plain and ordinary meaning of the term "client computer," the Board's decision should be affirmed.

**D. Substantial evidence supports that Kiuchi's server-side proxy is a "target computer."**

VirnetX argues that the "Board never properly addressed VirnetX's arguments that the target computer in Kiuchi is the origin server, not the server-side proxy." VirnetX Br. 34. The Board was not required to pass judgment on a hypothetical rejection created by VirnetX; rather, the Board was charged with deciding "whether each ground of rejection *of the examiner* which is appealed to it is right or wrong." *Skyhawke Techs., LLC v. Deca Int'l Corp.*, 828 F.3d 1373, 1377 (Fed. Cir. 2016) (emphasis added). The examiner's rejection (which the Board affirmed) stated that "the server-side proxy is a 'target computer,' as recited in the claim." Appx4872 (adopted by the examiner at Appx1909). Kiuchi explains that the server-side proxy is the target of communications from the client-side proxy: "a

client-side proxy sends a request for connection to the server-side proxy." Appx4388. VirnetX does not show any error in the examiner's analysis that the Board affirmed.

Whether Kiuchi's origin server might also be a "target computer" (as VirnetX contends) is also not relevant because the claim simply recites "domain name *associated* with the target computer." Appx109, 47:25-26 (emphasis added). The claim does not recite that the claimed "domain name" must *be* the name of the target computer itself. And Kiuchi plainly teaches a domain name is "associated" with the server-side proxy, as Kiuchi's name server responds to the domain name query with information about the server-side proxy:

> A client-side proxy asks the C-HTTP name server whether it can communicate with the host specified in a given URL…. If the connection is permitted, the C-HTTP *name server sends the IP address* and public key *of the server-side proxy* and both request and response Nonce values.

Appx4388 (emphasis added).

As such, it does not matter whether Kiuchi's "host specified in a given URL" refers to the host name of the server-side proxy or the origin server. Either way, the host name is "associated" with the server-side proxy.

Next, VirnetX argues that Kiuchi's server-side proxy does not host a website. VirnetX Br. 35. But as the Board correctly noted, the claim does not require the "target computer" to host a website. Appx21. While claim 1 does recite a "target

web site," it is silent about the relationship—if any—between the "target web site" and the "target computer."

VirnetX appears to treat the "target web site" and the "target computer" as one and the same. *See* VirnetX Br. 34 (identifying Kiuchi's origin server as supplying both the claimed "secure target website" and "target computer"). But by reciting them separately, "the clear implication of the claim language is that those elements are distinct components." *Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*, 616 F.3d 1249, 1254 (Fed. Cir. 2010) (internal quotations and alterations omitted).

VirnetX alternatively argues that the claimed "target computer" must be a computer hosting the claimed "target web site." VirnetX Br. 24. But no such relationship between the two is recited in the claims. VirnetX's only specification support for its argument is a single sentence stating that "a VPN is established between the 'the user's computer and the secure target site.'" VirnetX Br. 35 (quoting Appx105 (39:24-25, 34-38)). That disclosure provides no support for VirnetX's position, however, because it says nothing about a *web* site. The sentence also appears to be directed to a different embodiment than claim 1, which recites that the VPN is initiated to the target *computer*, not to the separately claimed secure target *web site*.

VirnetX has also notably—and successfully—fought against prior attempts "to read in elements from the specification and other claims." *Compare* VirnetX Brief in 13-1489, Dkt. 54, at 33 (Dec. 9, 2013). Given VirnetX's prior insistence that the claims be limited only where a feature is expressly recited, this Court should reject VirnetX's latest pivot seeking to conjure an unrecited relationship between the "target web site" and the "target computer."

Finally, VirnetX makes the following problematic assertion:

> The Board's only rejoinder to this point is its conclusory statement that, beyond "requir[ing] that the domain name is associated with a[] target computer," "Claim 1 does not also require that the target computer is 'one or more web pages at a location on the World Wide Web,'" Appx20-21, even though that was Cisco's and the Examiner's definition of a "website," Appx2103; Appx4877.

VirnetX Br. 36. VirnetX's statement suggests that either the examiner or Cisco had argued that the target computer must host a website. But neither the examiner nor Cisco took such a position.[2] Rather, Cisco and the examiner consistently identified Kiuchi's server-side proxy as the claimed "target computer" (Appx4872; Appx1909) and never read into claim 1 the unrecited concept of a "target computer" that hosts a website.

---

[2] And for that matter, VirnetX disagreed with the construction of "website" it now quotes. That construction was adopted by a district court in 2012 (Appx5413-5414) over VirnetX's disagreement. Appx2103 ("Patent Owner does not fully agree with these constructions…").

### E. The Board correctly determined that Kiuchi teaches "direct communication" between the client-side and server-side proxies.

VirnetX further argues that the Board erred in finding that "direct communication" (if required by claim 1) is taught by Kiuchi.[3] *See* VirnetX Br. 36. But VirnetX's argument is based entirely on ignoring the Board's claim analysis and adopting VirnetX's self-serving identification of Kiuchi's web browser as the "client computer" and Kiuchi's origin server as the "target computer." VirnetX Br. 38-42. Under the examiner's and Board's correct analysis of Kiuchi—identifying the client-side proxy as the "client computer" and the server-side proxy as the "target computer"—Kiuchi plainly teaches "direct communication." Appx19.

Kiuchi discusses how the client-side proxy communicates directly with the server-side proxy. For example, in establishing a connection, the client-side proxy sends a request message directly to the server-side proxy:

> When the C-HTTP name server confirms that the specified server-side proxy is an appropriate closed network member, *a client-side proxy sends a request for connection to the server-side proxy*, which is encrypted using the server-side proxy's public key and contains the client-side proxy's IP address, hostname, request Nonce value and symmetric data exchange key for request encryption.

Appx4388 (emphasis added).

[3] VirnetX also contests the Board's holding that claim 1 does not require "direct" communication. VirnetX Br. 37. That issue is moot, as the Board also found that Kiuchi teaches "direct" communication. Appx19-20.

The server-side proxy subsequently collects various data and sends a reply message to the client-side proxy:

> When *the sever-side proxy obtains the client-side proxy's IP address, hostname and public key*, it authenticates the client-side proxy, checks the integrity of the request and the request Nonce value and generates both a connection ID derived from the server-side proxy's name, date and random numbers (32 bits) using MD5, and also a second symmetric data exchange key for response encryption, *which are sent to the client-side proxy*. When the client-side proxy accepts and checks them, the connection is established.

Appx4389 (emphasis added).

VirnetX concedes that Kiuchi teaches that a "'connection is established' between the client-side proxy and the server-side proxy." VirnetX Br. 39 (citing Appx4389). Indeed, in other briefing before this Court in other appeals, VirnetX has expressly included an illustration (prepared by Apple) showing the direct, encrypted connection between Kiuchi's client-side proxy and server-side proxy:




Corrected Non-Confidential Brief of Plaintiffs-Appellees, *VirnetX, Inc. v. Cisco Systems, Inc.*, No. 13-1489, Dkt. 54, p. 4 (Fed. Cir. Dec. 9, 2013).

Thus, to the extent that claim 1 is interpreted to require "direct communications," substantial evidence supports the Board's conclusion that Kiuchi's client-side proxy communicates directly with the server-side proxy.

## IV. The Board's affirmation of the obviousness rejections based on Solana and Kiuchi is supported by substantial evidence.

VirnetX argues that the Solana-Kiuchi rejections must be remanded to the Board for further consideration for the same reasons it raises regarding Kiuchi alone. VirnetX Br. 43 (referencing "the same deficiencies discussed above…"). But the Board's rejections based on Kiuchi are supported by substantial evidence and should

be affirmed. *See supra*. Thus, the Board's correct analysis of Kiuchi does not justify any remand of the Solana-Kiuchi rejections.

### A. Substantial evidence supports the obviousness of the "determining" step.

VirnetX complains that the Board insufficiently responded to its arguments on "the 'determining' limitation." VirnetX Br. 44. But VirnetX's brief to this Court does not identify what those allegedly overlooked arguments were or how they might have influenced the ultimate conclusions of obviousness. In fact, VirnetX's argument to the Board was based on questioning which device would perform parts of the "determining" step. *See* Appx2134 ("the combination would perform the 'determination' on a request generated from the DBS and not on the request generated by the initiator"). But the examiner's rejection had already noted that VirnetX itself "argued that 'nothing in the claim limits which computers perform the "determining" step.'" Appx4981 (adopted at Appx2043, quoting Appx4252). VirnetX prevailed in district court on that dispute, with the court agreeing that a "client computer can perform the 'determining' step." Appx4252. Thus, substantial evidence—in the form of VirnetX's own prior, successful arguments—supports the Board's finding that the Solana-Kiuchi combination render obvious the "determining" step.

### B. VirnetX was not denied an opportunity to challenge the Board's Solana-Kiuchi analysis.

Next, VirnetX focuses on an alleged procedural error: that the Board supposedly failed to designate its affirmance of the Solana-Kiuchi rejections as a new ground of rejection. VirnetX argues that the Board's Solana-Kiuchi analysis was "materially new, and VirnetX never had a fair opportunity to respond." VirnetX Br. 45.

VirnetX did have an opportunity to raise that dispute with the Board, and *it chose not to*. Following the Board's decision, VirnetX filed a request for rehearing on March 6, 2018. *See* Appx2333-2336. As part of filing, VirnetX could have identified the alleged "failure to designate a new ground of rejection in [the Board's] decision." 37 C.F.R. § 41.50(c). *VirnetX did not*. Having decided to forego raising the "new ground of rejection" issue before the Board, VirnetX cannot raise it now for the first time on appeal. 37 C.F.R. § 41.50(b)(2) ("The *request for rehearing must address any new ground of rejection* and state with particularity the points believed to have been misapprehended or overlooked in entering the new ground of rejection and also state all other grounds upon which rehearing is sought.") (emphasis added).

### C. Substantial evidence supports combining Solana and Kiuchi.

VirnetX argues that "the Board did not make the requisite findings" regarding the Solana-Kiuchi combination. VirnetX Br. 45-46. VirnetX argues that the Board

was required to "explain *how* Kiuchi's purported DNS request would or could have been incorporated into Solana's system." VirnetX Br. 46.

First, VirnetX failed to preserve the argument it now presses on appeal. VirnetX's brief to the Board did not identify the combinability of Kiuchi and Solana as an issue in dispute. *See* Appx2133-2135. Rather, VirnetX identified two issues to the Board: (1) whether Kiuchi and Solana taught the "generating" step (Appx2133), and (2) whether Kiuchi and Solana taught the "determining" step (Appx2134). *See* 37 C.F.R. § 41.37(c)(1)(iv) ("Each ground of rejection contested by appellant must be argued under a separate heading, and each heading shall reasonably identify the ground of rejection being contested"). To the extent that VirnetX ever suggested Kiuchi and Solana's combinability as an ancillary issue, the Board cannot be faulted for failing to discuss it. The Board is "not require[d] … to address every argument raised by a party or explain every possible reason supporting its conclusion." *Synopsys, Inc. v. Mentor Graphics Corp.*, 814 F.3d 1309, 1322 (Fed. Cir. 2016), *overruled on other grounds*, *Aqua Prods., Inc. v. Matal*, 872 F.3d 1290, 1296 n.1 (Fed. Cir. 2017) (en banc); *see also Yeda Research & Dev. Co. v. Mylan Pharms. Inc.*, 906 F.3d 1031, 1046 (Fed. Cir. 2018). That general principle is especially relevant here, given that VirnetX filed a sprawling brief that more than doubled the Board's standard briefing limits yet did not directly address the combinability issue it now raises on appeal. *See* Appx2161.

And even if this Court chooses to review VirnetX's new-on-appeal argument, it is without merit. Obviousness does not require "'the features of a secondary reference [to] be bodily incorporated into the structure of the primary reference.'" *Allied Erecting & Dismantling Co. v. Genesis Attachments, LLC*, 825 F.3d 1373, 1381 (Fed. Cir. 2016) (quoting *In re Keller*, 642 F.2d 413, 425 (CCPA 1981)). What matters instead is "'whether the claimed inventions are rendered obvious by the teachings of the prior art as a whole.'" *Allied Erecting*, 825 F.3d at 1381 (quoting *In re Etter*, 756 F.2d 852, 859 (Fed. Cir. 1985) (en banc)). Here, the Board gave a rational explanation for why a person of ordinary skill would have combined Solana and Kiuchi: "Given that both Kiuchi and Solana disclose secure communications, we agree with the Examiner and Requester that it would have been obvious to one of ordinary skill in the art to have determined if an entity in a secure communication is secure or not." Appx28. The Board's findings are supported by substantial evidence.

## V. If the Board is not affirmed, this case must be remanded for consideration of the additional claim rejections adopted by the examiner.

There are numerous alternative grounds supporting affirmance of the examiner's rejection that the Board was not required to reach. For the reasons discussed above, a general affirmance of the Board's decision is appropriate. If there is any claim for which this Court decides not to affirm the examiner's and Board's

rejections, this case must be remanded for the Board to consider additional rejections that were adopted by the examiner:[4]

- The rejection of claims 1-5, 7-9, 13, and 18 under 35 U.S.C. § 102(e) over Wesinger;
- The rejection of claim 6 under 35 U.S.C. § 103 over Wesinger and Martin;
- The rejection of claims 1-5, 7, and 18 under 35 U.S.C. § 102(e) over Aziz;
- The rejection of claim 13 under 35 U.S.C. § 103 over Aziz and Kiuchi;
- The rejection of claim 6 under 35 U.S.C. § 103 over Aziz and Martin;
- The rejection of claim 9 under 35 U.S.C. § 103 over Aziz and Bellovin;
- The rejection of claims 5 and 8 under 35 U.S.C. § 103 over Kiuchi and Dalton.

Appx2089.

The Board opted not to review these additional bases for rejecting the claims because they would have been redundant in view of the Board's existing decision. Appx29. Because the claims stand rejected under these additional grounds, this Court cannot reverse the Board and, if this Court does not affirm, it must remand for further proceedings.

[4] Note that VirnetX's opening brief admits the invalidity of claims 13-17. *See supra*, § II.

### VI. The review below comports with *Arthrex*, the Appointments Clause, and the Federal Vacancies Reform Act.

VirnetX acknowledges that its challenges under *Arthrex*, the Appointments Clause, and the Federal Vacancies Reform Act have already been rejected by this Court in *Arthrex, Inc. v. Smith & Nephew, Inc.*, 35 F.4th 1328 (Fed. Cir. 2022) ("*Arthrex II"*). For the reasons articulated by this Court in *Arthrex II*, VirnetX's challenge to the propriety of Director review should be denied.

## CONCLUSION

Substantial evidence supports the Board's obviousness findings, and this Court should affirm.

Respectfully Submitted,

**HAYNES AND BOONE, LLP**

*/s/ David L. McCombs*
David L. McCombs
Debra J. McComas
Theodore M. Foster
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Phone: (214) 651-5533
Fax: (972) 692-9116
*David.McCombs@haynesboone.com*
*Debbie.McComas@haynesboone.com*
*Theo.Foster@haynesboone.com*

**Attorneys for Appellee**
**Cisco Systems, Inc.**

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of FED. CIR. R. 32(b)(1) because:

■ this brief contains **7,350** words, excluding the parts of the brief exempted by FED. R. APP. P. 32(f) and FED. CIR. R. 32(b)(2).

2. This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because:

■ this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman font.

*/s/ David L. McCombs*
David L. McCombs