**2019-1671**

# United States Court of Appeals for the Federal Circuit

**VIRNETX INC.,**
*Appellant*

*v.*

**CISCO SYSTEMS, INC.,**
*Appellee*

**KATHERINE K. VIDAL, Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office,**
*Intervenor*

*Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. 95/001,679.*

## REPLY BRIEF FOR APPELLANT VIRNETX INC.

Naveen Modi
Joseph E. Palys
Stephen B. Kinnaird
Igor V. Timofeyev
Daniel Zeilberger
PAUL HASTINGS LLP
2050 M Street, N.W.
Washington, D.C. 20036
Tel.: (202) 551-1700

October 7, 2022

*Counsel for Appellant VirnetX Inc.*

## CERTIFICATE OF INTEREST

Counsel for Appellant VirnetX Inc. certifies the following:

| 1. Full name of party represented by me | 2. Name of real party in interest represented by me | 3. Parent corporations and publicly held companies that own 10% or more of stock in the party |
|---|---|---|
| VirnetX Inc. | VirnetX Inc. | VirnetX Inc. is a wholly owned subsidiary of VirnetX Holding Corporation. |

4. The names of all law firms and the partners or associates that appeared for the party now represented by me in the agency or are expected to appear in this court (and who have not or will not enter an appearance in this case) are:

None.

5. The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. *See* Fed. Cir. R. 47.4(a)(5) and 47.5(b).

*VirnetX Inc. v. Mangrove Partners Master Fund, Ltd.*, No. 20-2271 (Fed. Cir.);

*VirnetX Inc., Leidos, Inc. v. Apple Inc.*, No. 21-1672 (Fed. Cir.);

*VirnetX Inc. v. Apple Inc.*, No. 22-1523 (Fed. Cir.);

*VirnetX Inc. v. Apple Inc.*, No. 6:13-cv-00211 (E.D. Tex.).

6. Information required by Federal Rule of Appellate Procedure 26.1(b) and (c) that identifies organizational victims in criminal cases and debtors and trustees in bankruptcy cases.

Not Applicable

Dated: October 7, 2022

/s/ Naveen Modi
Naveen Modi

*Counsel for Appellant VirnetX Inc.*

# TABLE OF CONTENTS

**Page**

REPLY BRIEF ....... 1

I. VIRNETX PROPERLY PRESERVED ITS ARGUMENTS IN THIS APPEAL ....... 3

II. THE BOARD'S FINDING THAT KIUCHI ANTICIPATES THE '135 PATENT CANNOT STAND. ....... 7

A. Cisco's Purported Distinctions Between this Case and *Mangrove* Are Irrelevant. ....... 7

B. The Board Erred in Mapping the "Client Computer" onto Kiuchi's Client-Side Proxy, and in Refusing to Consider VirnetX's Claim Construction Arguments ....... 11

C. The Board Erred in Concluding that Kiuchi's Server-Side Proxy Is the Target Computer for Which a VPN Is Established. ....... 16

D. The Board Erred in Rejecting the "Direct Communication" Requirement this Court Endorsed in *Mangrove*, and Alternatively by Finding It Satisfied by Proxy-to-Proxy Communication. ....... 18

III. THE BOARD'S OBVIOUSNESS REJECTIONS BASED IN PART ON KIUCHI SHOULD BE SET ASIDE. ....... 19

A. The Obviousness Rejections Based on Kiuchi and Solana Cannot Be Maintained. ....... 19

B. The Obviousness Rejections Based on a Combination of Kiuchi or Kiuchi and Solana with Other References Cannot Be Maintained. ....... 21

IV. THE APPOINTMENTS CLAUSE, *ARTHREX*, AND THE FVRA REQUIRE A REMAND TO A PERMANENT PTO DIRECTOR. ....... 22

CONCLUSION ....... 22

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arthrex, Inc. v. Smith & Nephew, Inc.*,
35 F.4th 1328 (Fed. Cir. 2022) ....................22

*Burke, Inc. v. Bruno Indep. Living Aids, Inc.*,
183 F.3d 1334 (Fed. Cir. 1999) ....................8

*Darby v. Cisneros*,
509 U.S. 137 (1993)....................5, 6

*Local 814, Int'l Bhd. of Teamsters v. N.L.R.B.*,
512 F.2d 564 (D.C. Cir. 1975)....................11

*In re Magnum Oil Tools Int'l, Ltd.*,
829 F.3d 1364 (Fed. Cir. 2016) ....................5

*Mid-Tex Elec. Coop., Inc. v. FERC*,
773 F.2d 327 (D.C. Cir. 1985)....................11

*N.L.R.B. v. Pan Am. Petroleum Corp.*,
444 F.2d 328 (10th Cir. 1971) ....................11

*In re Nuvasive, Inc.*,
842 F.3d 1376 (Fed. Cir. 2016) ....................7

*Polycom, Inc. v. Fullview, Inc.*,
767 F. App'x 970 (Fed. Cir. 2019) ....................6, 7

*In re Swanson*,
540 F.3d 1368 (Fed. Cir. 2008) ....................8

*United States v. Arthrex, Inc.*,
141 S. Ct. 1970 (2021)....................3, 22

*Vicor Corp. v. SynQor, Inc.*,
869 F.3d 1309 (Fed. Cir. 2017) ....................11

*VirnetX Inc. v. The Mangrove Partners Master Fund, Ltd.*,
778 F. App'x 897 (Fed. Cir. 2019) ....................*passim*

*VirnetX, Inc. v. Cisco Sys., Inc.*,
767 F.3d 1308 (Fed. Cir. 2014) ....................10

*Wavetronix LLC v. EIS Elec. Integrated Sys.*,
573 F.3d 1343 (Fed. Cir. 2009) ....................16

**Statutes**

6 U.S.C. § 825*l*(b) ....................5

35 U.S.C. § 141(b) ....................5

35 U.S.C. § 141(c) ....................5

35 U.S.C. § 316(e) ....................9

**Rules and Regulations**

37 C.F.R. § 1.983 ....................5

37 C.F.R. § 41.50 ....................20

37 C.F.R. § 41.50(c)....................5, 20

37 C.F.R. § 41.77 ....................20

37 C.F.R. § 41.79(a)....................4

37 C.F.R. § 41.79(b)(1)....................4, 6

37 C.F.R.§ 41.79(d) ....................4

37 C.F.R. § 41.81 ....................4

37 C.F.R. § 42.1(d) ....................9

**Administrative Decisions**

*Mangrove Partners Master Fund, Ltd. v. VirnetX Inc.*,
IPR2015-01046, Paper 112 (P.T.A.B. July 14, 2020)....................10, 12, 13, 17

## REPLY BRIEF

In its opening brief, Appellant VirnetX Inc. ("VirnetX") has shown that the Board's decision below conflicts irreconcilably with this Court's decision in *VirnetX Inc. v. The Mangrove Partners Master Fund, Ltd.*, 778 F. App'x 897 (Fed. Cir. 2019)—a decision involving patentability of the *same* claims of the *same* patent against the *same* Kiuchi reference. Lacking the benefit of this Court's guidance, the Board's decision below (rendered a year-and-a-half earlier) repeated the exact same errors that this Court identified in *Mangrove*. There is no principled way to reconcile the decision below with this Court's statements in *Mangrove* regarding the proper construction and mapping of the term "client computer," 778 F. Appx at 908-09, and this Court's holding that the claims require "direct communication between the client and target computers," *id.* at 910—not (as the Board incorrectly found) between Kiuchi's separate proxy components. Moreover, the Board's decision below directly conflicts with its decision on remand in *Mangrove*, which at a minimum requires a remand for the Board to reconcile its inconsistent positions.

Faced with defending the indefensible, Appellee Cisco Systems, Inc. ("Cisco") embarks on misdirection. Cisco first argues that VirnetX waived its arguments in this appeal because it did not present them when seeking panel rehearing by the Board. This argument finds no support in the Board's rules, and is foreclosed by precedent, as well as by simple logic. In any event, VirnetX raised *all*

of the arguments it now presents to this Court when it sought Director rehearing of the Board's decision, thus satisfying even Cisco's contorted preservation theory.

Cisco next serves up a smorgasbord of ostensible distinctions between *Mangrove* and this appeal, but none holds up to scrutiny. *Mangrove* considered the very same patent, same prior art, and same patentability issues that are in play here. And Cisco can identify no material difference in either the underlying record or the arguments that would justify a different outcome in this case. Indeed, Cisco entirely ignores that, guided by this Court's direction in *Mangrove*, *the Board itself* on remand in that case accepted VirnetX's construction of "client computer" and found that it could *not* be mapped onto Kiuchi's client-side proxy.

Cisco's remaining arguments also cannot shore up the Board's deficient decision. Cisco presses arguments the Board itself never adopted; it labels as "hypothetical" arguments central to the case (but that the Board failed to address); and it outright contradicts the arguments Cisco itself made in parallel district court litigation. Notably, Cisco does not dispute that, under VirnetX's construction (which adheres to *Mangrove*), Kiuchi's client-side proxy is *not* the claimed "client computer" and Kiuchi's proxy-to-proxy communication does *not* establish direct communication between the claimed client and target computers. Nor can Cisco justify the Board's rejections based on a combination of Kiuchi and Solana, which suffer from the same defects. This Court should vacate the Board's decision.

## I. VIRNETX PROPERLY PRESERVED ITS ARGUMENTS IN THIS APPEAL

Cisco does not dispute that VirnetX raised before the Board all of the arguments it presents on appeal. Cisco Br. 15-16; *see also* Appx2094-2106; Appx2133-2135; Appx2277-2283; Appx2297-2299; Appx7423-7426. Cisco nonetheless contends that VirnetX somehow waived those arguments because it did not also include them in its petition for Board panel rehearing below. Cisco Br. 15-16. That argument lacks merit. There is no requirement that a party seeking rehearing of a Board decision include in its request every argument the party intends to raise on appeal to this Court. And even if there were such a requirement, VirnetX satisfied it by raising all of its appeal arguments in its request for Director review (*i.e.*, rehearing) of the Board's decision.

As an initial matter, in this case VirnetX *did* request rehearing of *all* the issues it now raises on appeal when it filed a request for Director review of the Board's decision. Appx7418-7430. The Director, as the presidentially-appointed and Senate-confirmed head of the agency, "may review final PTAB decisions and, upon review, may issue decisions himself on behalf of the Board." *United States v. Arthrex, Inc.*, 141 S. Ct. 1970, 1987 (2021). Director review is itself "rehear[ing]" of the Board's decision. *Id.* Thus, even if a party that seeks rehearing of a Board decision were required to raise on rehearing all issues it intends to appeal to this Court, VirnetX complied with that putative requirement. There is no conceivable

waiver.

Regardless, there is no support for any such requirement, and precedent forecloses it. Cisco invokes the Board's rule that a rehearing request before the Board "state with particularity the points believed to have been misapprehended or overlooked in rendering the Board's opinion reflecting its decision." 37 C.F.R. § 41.79(b)(1). But that regulation simply requires a party to identify "with particularity" issues it wishes to present for *rehearing by the Board*. The regulation does not require a party to seek further agency review of an issue in order to preserve it for *review by this Court*. In fact, the Board's regulations make clear that filing a rehearing request is optional. *See* 37 C.F.R. § 41.79(a) ("[p]arties to the appeal *may* file a request for rehearing") (emphasis added); *id.* § 41.79(d) ("*If* a party to an appeal files a request for rehearing … the Board shall render a decision on the request for rehearing.") (emphasis added); *id.* § 41.81 (specifying that the parties may appeal to this Court once "all parties' *rights to request rehearing* have been exhausted") (emphasis added). Indeed, Cisco itself concedes that "VirnetX was not obligated to seek rehearing prior to appealing to this Court." Cisco Br. 15.

Cisco nevertheless argues that, because VirnetX chose to seek Board rehearing on some issues, it was required to request rehearing on *all issues* it wished to present for this Court's review. Cisco Br. 16. That position is foreclosed by Supreme Court precedent. As the Supreme Court has explained, under the

Administrative Procedure Act, "an appeal to 'superior agency authority' is a prerequisite to judicial review *only* when expressly required by statute or when an agency rule requires appeal before review." *Darby v. Cisneros*, 509 U.S. 137, 154 (1993) (emphasis in original); *cf.* 6 U.S.C. § 825*l*(b) (provision of Federal Power Act requiring issue to be raised on rehearing to be preserved for appeal). Here, neither the statute nor any agency regulation imposes such a requirement. *See* 35 U.S.C. § 141(b); 37 C.F.R. § 1.983.[1] In fact, as this Court held with respect to a materially identical statutory provision governing appeals from *inter partes* review proceedings (35 U.S.C. § 141(c)), "[n]owhere does the statute granting parties the right to appeal a final written decision in an IPR require that the party first file a request for rehearing before the Board." *In re Magnum Oil Tools Int'l, Ltd.*, 829 F.3d 1364, 1377 (Fed. Cir. 2016).

Cisco's proposed rule is illogical, and would result in a needless expenditure of the Board's resources. There is no reason why an issue that VirnetX pressed before the Board, and which Cisco concedes would have remained preserved had VirnetX requested *no rehearing*, should suddenly become unpreserved because

[1] By contrast, when the Board wants to require a party to seek rehearing on an issue—or face waiver of an argument—it does so expressly. *See, e.g.*, 37 C.F.R. § 41.50(c) (providing, in the context of *ex parte* appeals, that a "[f]ailure of appellant to timely file … a request for rehearing will constitute a waiver of any arguments that a decision contains an undesignated new ground of rejection"). Not only do the Board regulations not impose any rehearing requirement, but the Board would lack power to curtail a party's statutory judicial-review rights by regulation.

VirnetX sought rehearing of other issues. Cisco's proposed all-or-nothing requirement is also inappropriate because the standard for Board rehearing—a showing that the Board "misapprehended or overlooked" a specific point, 37 C.F.R. § 41.79(b)(1)—is different from the standard this Court applies when reviewing the Board's decision.

Cisco seeks support in this Court's nonprecedential decision in *Polycom, Inc. v. Fullview, Inc.*, 767 F. App'x 970 (Fed. Cir. 2019). *See* Cisco Br. 15. But *Polycom* cannot provide the basis for an exhaustion requirement contained in neither the statute nor regulation. *See Darby*, 509 U.S. at 154. Moreover, *Polycom* is distinguishable. In *Polycom*, the appellant (which was challenging the patent) urged the Board to reverse the examiner's finding of non-anticipation, arguing that the asserted reference (Lelong) did not teach away from the use of mirrors. 767 F.3d at 977. The Board agreed that the reference did not teach away, but instead entered a finding of obviousness that it designated as a new ground of rejection. *Id.* at 977-78. After prosecution was reopened, the examiner found no obviousness and the Board affirmed that finding. *Id.* at 978. On appeal to this Court, the appellant argued that the Board's finding that Lelong did not teach away "should have ended the Board's analysis," requiring a finding of anticipation. *Id.* at 979. The appellee (the patent owner) urged waiver on the grounds that, during the Board proceedings, "Polycom did nothing to correct what it now claims was error," "never suggested

any error, [and] never addressed the Lelong anticipation issue." Appellee's Br. 56-57 in No. 18-1829 (Fed. Cir. Aug. 31 2018). This Court appears to have been concerned that "the Board itself was not given a chance to address" the argument Polycom made on appeal, thereby "'depriv[ing] the court of the benefit of the [Board]'s informed judgment.'" *Polycom*, 767 F. App'x at 980 (quoting in *In re Nuvasive, Inc.*, 842 F.3d 1376, 1380 (Fed. Cir. 2016)) (selected internal quotation marks omitted). Here, by contrast, the Board was given a chance to (and did) address VirnetX's arguments, and this Court has the benefit of the Board's informed (albeit mistaken) judgment on those arguments. This Court should reject Cisco's unfounded assertion of waiver.

## II. THE BOARD'S FINDING THAT KIUCHI ANTICIPATES THE '135 PATENT CANNOT STAND.

### A. Cisco's Purported Distinctions Between this Case and *Mangrove* Are Irrelevant.

As VirnetX explained, in *Mangrove* this Court considered *the same* claim construction arguments with respect to *the same* claim terms that are in issue here, and vacated the Board's invalidity findings with respect to claims of *the same* patent against *the same* asserted reference. VirnetX Br. 26-27. Cisco asks the Court to disregard *Mangrove*, but none of the reasons it proffers has merit.

*First*, Cisco points out that *Mangrove* was a nonprecedential decision. Cisco Br. 17. But that is beside the point. VirnetX is not relying on *Mangrove* for a general

legal principle that should be applied across all appeals. Rather, *Mangrove* represents a decision by this Court with respect to the very same patent, prior art, and patentability issues that are involved in this appeal. The '135 patent should be analyzed in a uniform manner both here and in *Mangrove*. This Court has made clear that reliance on nonprecedential opinions interpreting the same patent, including the meaning of its claim terms, is proper to ensure uniform treatment of that patent. *See Burke, Inc. v. Bruno Indep. Living Aids, Inc.*, 183 F.3d 1334, 1337-38 (Fed. Cir. 1999). Cisco offers no basis for departing from that commonsense principle.

*Second*, Cisco asserts that the *inter partes* reexamination at issue here and the *inter partes* review at issue in *Mangrove* are "different types of proceedings," and then invokes this Court's decision in *In re Swanson*, 540 F.3d 1368 (Fed. Cir. 2008), for the proposition that an "independent invalidity determination" should be made in a reexamination "despite [a] prior validity finding *in district courts*." Cisco Br. 17 (emphasis added). Cisco is comparing apples to oranges. *Swanson* hinged on the unique characteristics of *district-court litigation* as compared to *PTO proceedings*—it was not distinguishing between different kinds of PTO proceedings. For instance, *Swanson* observed that, "[i]n PTO … reexaminations, the standard of proof—a preponderance of evidence—is substantially lower than in a civil case." 540 F.3d at 1377. By contrast, both *inter partes* reviews and reexaminations apply a

preponderance-of-the-evidence standard. *See* 35 U.S.C. § 316(e) ("In an inter partes review instituted under this chapter, the petitioner shall have the burden of proving a proposition of unpatentability by a preponderance of the evidence."); 37 C.F.R. § 42.1(d) ("The default evidentiary standard is a preponderance of the evidence."). Moreover, the fundamental questions here concern the construction of the claim terms "client computer" and "target computer," which are questions of law, as well as the application of those terms to Kiuchi's components. And Cisco points to *no difference* between *inter partes* reviews and *inter partes* reexaminations that would justify analyzing the same patent differently.

*Third*, Cisco argues that "*Mangrove* and this case involve different arguments and a different record." Cisco Br. 17. This is a red herring. What is relevant here is that the Board made the same errors that this Court identified in *Mangrove*. Cisco points to no material difference between the record or arguments in the two appeals that would warrant a different result here, particularly on questions of claim construction.

Cisco notes that "on remand, the Board in *Mangrove* still found the challenged patent claims unpatentable." Cisco Br. 18. Cisco misleadingly omits the fact that, guided by this Court's *Mangrove* decision, the Board on remand construed the claim term "client computer" to refer to a user's computer and *rejected* reliance on "Kiuchi's client-side proxy as the claimed 'client,'" Cisco Br. 17 (citations

omitted)—the very same reliance that the Board below adopted and that Cisco presses here. *See Mangrove Partners Master Fund, Ltd. v. VirnetX Inc.*, IPR2015-01046, Paper 112 at 11, 19-20 (P.T.A.B. July 14, 2020) (agreeing with VirnetX's construction of "'client computer' as 'user's computer,'" and finding that, under that proper construction, Kiuchi's client-side proxy *cannot* map to the claimed "client computer"). Nor does Cisco offer *any response* to VirnetX's argument that the Board's decision directly conflicts with this Court's finding, in another prior appeal involving the '135 patent, that the "client computer" in Kiuchi is "distinguishable from the client-side proxy." *See* VirnetX Br. 32-33 (citing *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1324 (Fed. Cir. 2014)). Cisco's effort to side-step this Court's prior decisions in *Mangrove* and *Cisco* is simply unavailing.

It is the height of arbitrariness for the Board in two decisions to adopt conflicting claim constructions of the same claim terms and conflicting mapping of claim terms to the components of the same prior-art reference. In contrast to the decision below, the Board on remand in *Mangrove* construed "client computer" to be a "user's computer"; rejected the mapping of Kiuchi's client-side proxy to the "client computer"; found that "[t]he claimed target computer reads on Kiuchi's origin server"; and required the claimed "virtual private network" to be established between Kiuchi's user agent and origin server. *See Mangrove Partners*, IPR2015-01046, Paper 112 at 11, 13-20. When the Board takes inconsistent positions on the

exact same issues involving the exact same patent and the same prior-art reference, this Court at a minimum should vacate the final written decision for the Board to reconcile those inconsistencies. *See Vicor Corp. v. SynQor, Inc.*, 869 F.3d 1309, 1321-23 (Fed. Cir. 2017); *see also Mid-Tex Elec. Coop., Inc. v. FERC*, 773 F.2d 327, 353 (D.C. Cir. 1985) (court "cannot affirm a decision based on ... different and inconsistent answers to the same fundamental questions"); *Local 814, Int'l Bhd. of Teamsters v. N.L.R.B.*, 512 F.2d 564, 567 (D.C. Cir. 1975) (remanding "factually similar and ostensibly inconsistent" decisions of the National Labor Relations Board because the Board "ha[d] not explained its reasons for reaching different results"); *N.L.R.B. v. Pan Am. Petroleum Corp.*, 444 F.2d 328, 332 (10th Cir. 1971) ("The integrity of the administrative process does require that the Board distinguish apparently inconsistent findings in cases involving the same employer."). Because "the direct conflict between the Board's fact findings … is unsupported by any rational explanation in either of the Board's decisions," and agency action can be arbitrary and capricious even if *arguendo* the decision is supported by substantial evidence, *Vicor,* 869 F.3d at 1323, vacatur is necessary here.

### B. The Board Erred in Mapping the "Client Computer" onto Kiuchi's Client-Side Proxy, and in Refusing to Consider VirnetX's Claim Construction Arguments.

The Board erred in construing "client computer" to encompass Kiuchi's client-side proxy, for the exact reasons identified by the Board in the *Mangrove* IPR.

There, the Board adopted VirnetX's construction of "'client computer' as 'user's computer'" on remand, and then found that under that proper construction, Kiuchi's client-side proxy *cannot* map to the claimed "client computer." *Mangrove Partners*, IPR2015-01046, Paper 112 at 7-11, 19-20. The Board found that the "Specification … confirms that, when created, the VPN extends from the user's computer with client software to the desired target site." *Id.* at 10 (citing Appx104 (38:13-65)). Based on that "close fit" between the specification and the claims the Board construed "client computer" to be the "user's computer." *Id.* at 10-11.

Turning to whether Kiuchi's client-side proxy could be the claimed "client computer," the *Mangrove* Board found that its claim construction "forecloses that … reading." *Mangrove Partners*, IPR2015-01046, Paper 112 at 19. "Quite simply," the *Mangrove* Board explained, "the client-side proxy is not a user's computer. Rather, it is a computer configured to manage the connection between a user's computer and nonlocal networks." *Id.* There is no logical rationale—and Cisco provides none—why this Court should uphold the Board's contrary conclusion below.

Cisco points to instances in the '135 patent where the words "user's computer" were not used. Cisco Br. 21-22. But this argument ignores what is claimed. The claims refer to a method of transparently creating a virtual private network that is initiated by having a client computer generating a DNS request. Appx109 (claim 1).

As the *Mangrove* Board explained, the specification describes only one embodiment directed to such a scenario, and it shows that the VPN "extends from the *user's computer* with client software to the desired target site." *Mangrove Partners*, IPR2015-01046, Paper 112 at 10 (citing Appx104 (37:17-21, 37:63-38:2, 38:13-65)) (emphasis added). And, as the Board further observed in *Mangrove*, "the Specification does not appear to discuss operations using DNS requests outside of [this] embodiment." IPR2015-01046, Paper 112 at 10; *see also* VirnetX Br. 31-33 (discussing the various aspects of the '135 patent specification supporting VirnetX's construction). Indeed, "the Specification *only* describes the client computer vis-à-vis the user." *Mangrove Partners*, IPR2015-01046, Paper 112 at 10. Finally, while Cisco claims Kiuchi's client-side proxy is a client computer under what it calls "the plain and ordinary meaning of the term 'client computer,'" Cisco Br. 24, it does not dispute that the client-side proxy is not a "client computer" under VirnetX's construction.

As VirnetX previously explained, while the Board nominally discussed VirnetX's construction of the term "client computer," the Board failed to actually address VirnetX's claim construction arguments—the same arguments the *Mangrove* Board adopted. VirnetX Br. 27-33. Cisco tries to brush aside the Board's error, asserting that VirnetX's contention is "simply not true" and then block-quoting from the Board's decision. Cisco Br. 19-20. Cisco then quickly pivots to claim

construction issues that the Board never actually considered. Cisco Br. 20-23. Cisco's cursory attempt to defend the Board's analysis falls flat.

For instance, Cisco asserts that the Board provided a reason for rejecting VirnetX's construction when it purportedly concluded that "VirnetX's proposal would inject a 'user' requirement into the claim language without justification." Cisco Br. 19. This argument is circular. VirnetX's construction of "client computer" was "user's computer"—a purported lack of "justification" for such a construction is a conclusion, not an explanation or reason for rejecting that construction. And the Board did not even go as far as Cisco claims. The portions of the Board's decision that Cisco quotes, and thus presumably would be most favorable for Cisco, are telling.

Cisco points to the following assertion by the Board: "'*Patent Owner argues that the claimed 'client computer' must be a 'user's computer'* and that Kiuchi fails to disclose a 'user's computer.' … However, Patent Owner does not explain sufficiently how Kiuchi fails to disclose a 'client computer,' which claim 1 recites.'" Cisco Br. 19 (quoting Appx16). This statement, however, only highlights the error in the Board's reasoning, since it shows that the Board simply presupposed, without any explanation why, that a "client computer" should not be construed as a "user's computer."

Cisco then invokes the following assertion by the Board: "'Even assuming that claim 1 recites a 'user's computer' (instead of a 'client computer,' which claim 1 actually recites) that generates a Domain Name Service (DNS) request, as Patent Owner appears to allege, Patent Owner does not demonstrate persuasively that the hypothetical 'user's computer' (renamed from 'client computer') differs from the client-side proxy of Kiuchi, which also generates a Domain Name Service (DNS) request.'" Cisco Br. 19 (quoting Appx16). Just as in *Mangrove*, however, VirnetX's proposed construction made clear that it did "not cover the client-side proxy." 778 F. App'x at 908; *see also* Appx2095-2099. Indeed, in the next passage identified by the Board, the Board appeared to recognize that the "user's computer" under VirnetX's construction was where an end-user sits: "Patent Owner argues that Kiuchi discloses that the 'client-side proxy' 'has no end-user' and fails to disclose that the 'client-side proxy' is 'where an end-user sits.'" Appx17, *quoted in* Cisco Br. 19-20. The Board, however, then again failed to address VirnetX's claim construction arguments, and instead simply asserted that the claim does not recite what VirnetX's construction requires: "Claim 1 recites 'generating from the client computer a Domain Name Service (DNS) request. Claim 1 does not also recite that the client computer must have an 'end-user' or that the client computer must be 'where an end-user sits.' Indeed, claim 1 does not recite an 'end-user' at all." Appx17, *quoted in* Cisco Br. 19-20.

To disguise the lack of any meaningful claim construction analysis by the Board for this Court to review, Cisco tries to cobble together a hodgepodge of claim construction arguments the Board never adopted. Cisco Br. 20-23. But "[a]lthough claim construction is a question of law, [this Court] generally refuse[s] to construe claims in the first instance." *Wavetronix LLC v. EIS Elec. Integrated Sys.*, 573 F.3d 1343, 1355 (Fed. Cir. 2009) (citing cases). "This [C]ourt's review, although de novo, is not to function as an independent analysis in the first instance." *Id.* At the very least, given the lack of analysis by the Board, remand is appropriate.

### C. The Board Erred in Concluding that Kiuchi's Server-Side Proxy Is the Target Computer for Which a VPN Is Established.

Kiuchi's server-side proxy does not read on the claimed "target computer," and the Board neglected to properly consider VirnetX's arguments on this point. VirnetX Br. 33-36. In response, Cisco argues that "[t]he Board was not required to pass judgment on" VirnetX's argument because "[t]he examiner's rejection (which the Board affirmed) stated that 'the server-side proxy is a 'target computer,' as recited in the claim." Cisco Br. 24. Cisco appears to imply that VirnetX advocated for a "hypothetical rejection" in which Kiuchi's origin server is the target computer. Cisco Br. 24. But VirnetX did not advocate for a "hypothetical rejection"—rather, it explained, among other things, that the server-side proxy in Kiuchi was not the target computer because *the origin server* was the target computer. VirnetX Br. 33-34. Indeed, the Board in *Mangrove* specifically found that "[t]he claimed target

computer reads on Kiuchi's origin server." *Mangrove Partners*, IPR2015-01046, Paper 112 at 18.

Cisco's (erroneous) reliance on Kiuchi's server-side proxy was significant since it laid the foundation for Cisco's argument that Kiuchi involves "direct communication." *See* Cisco Br. 28-30 (relying on the proxy-to-proxy connection in Kiuchi to argue for direct communication). The Board erred in not addressing VirnetX's arguments to the contrary in any meaningful way.

Cisco next argues that it does not matter if the origin server is the actual "target computer" because "the claim simply recites 'domain name *associated* with the target computer,'" and the "[t]he claim does not recite that the claimed 'domain name' must *be* the name of the target computer itself." Cisco Br. 25 (quoting Appx109 (47:25-26)). Cisco ignores other aspects of the claim, which requires "in response to determining that the DNS request in step (2) is requesting access to a secure target web site, automatically initiating the VPN between the client computer and the target computer." Appx109 (claim 1). In other words, the claim requires the VPN to be established with the target computer itself.

In an apparent response to VirnetX's argument that the server-side proxy has no web site (VirnetX Br. 35), Cisco further argues that the claim "is silent about the relationship—if any—between the 'target web site' and the 'target computer.'" Cisco Br. 26. And Cisco goes on to say that they are "distinct components." Cisco

Br. 26. Cisco's argument is disingenuous. Cisco *itself* successfully argued in a parallel district court litigation that the claimed "secure target web site" should be construed as "a secure web site on the target computer." Appx5414-5415; *see also* Appx5394. The district court found—again at Cisco's urging—that "[t]he claim language itself supports this interpretation because step 3 refers to "secure target web site,' thus linking the earlier referenced secure web site to the earlier referenced target computer." Appx5415.[2]

### D. The Board Erred in Rejecting the "Direct Communication" Requirement this Court Endorsed in *Mangrove*, and Alternatively by Finding It Satisfied by Proxy-to-Proxy Communication.

Cisco does not dispute that the Board erred in concluding, in direct conflict with this Court's holding in *Mangrove*, that the claimed VPN does not require direct communication. Cisco Br. 28 n. 3 (referring to the issue as "moot"); *see also* VirnetX Br. 36-38. Cisco's only rejoinder is that communication between the client-side proxy and server-side proxy is direct in Kiuchi. Cisco Br. 28-30. But that is irrelevant, and cannot rescue the Board's faulty decision. Cisco does not dispute that if the client in Kiuchi is its user agent, or if the target in Kiuchi is the origin

[2] Cisco suggests that VirnetX "successfully … fought against prior attempts to 'read in elements from the specification and other claims.'" Cisco Br. 27. This is, at best, an attempt at misdirection, since it appears to refer to entirely irrelevant claim terms not at issue here.

server, there is no direct communication, as is required by the claims. *See* VirnetX Br. 38-42.

## III. THE BOARD'S OBVIOUSNESS REJECTIONS BASED IN PART ON KIUCHI SHOULD BE SET ASIDE.

### A. The Obviousness Rejections Based on Kiuchi and Solana Cannot Be Maintained.

As VirnetX explained, the Board appears to have relied exclusively on Kiuchi to address the claim limitation "generating from the client computer a Domain Name Service (DNS) request that requests an IP address corresponding to a domain name associated with the target computer," and thus the deficiencies discussed relating to Kiuchi also infect the obviousness rejection based on the combination of Kiuchi and Solana. VirnetX Br. 42-44. Cisco does not appear to disagree, and argues only that "the Board's correct analysis of Kiuchi does not justify any remand of the Solana-Kiuchi rejections." Cisco Br. 31. For the reasons discussed in VirnetX's opening brief, the Board's analysis of Kiuchi was not "correct."

Cisco then pivots to VirnetX's point that the Board did not address VirnetX's arguments relating to the "determining" limitation. Cisco Br. 31; *see also* VirnetX Br. 44. Cisco complains that "VirnetX's brief to this Court does not identify what those allegedly overlooked arguments were or how they might have influenced the ultimate conclusion of obviousness." Cisco Br. 31. Cisco's retort is both incorrect (VirnetX specifically pointed to its argument at Appx2134-2135) and misses the

point. VirnetX identified this missed argument by the Board as evidence that the Board changed the rejection from one that relied on Kiuchi and Solana, to one that relied on Kiuchi alone, for the limitation in question. VirnetX Br. 44. Cisco does not appear to contest that point either.

Indeed, rather than contest VirnetX's point that the Board applied a materially new rejection, Cisco argues that VirnetX had "an opportunity to raise that dispute with the Board, and it chose not to." Cisco Br. 32. Cisco argues that when "VirnetX filed a request for rehearing," it "could have identified the alleged 'failure to designate a new ground of rejection in [the Board's] decision.'" Cisco Br. 32 (quoting 37 C.F.R. § 41.50(c)). Setting aside that VirnetX was not obliged to raise all possible arguments in its rehearing request, *supra* at 3-6, Cisco fundamentally misconstrues the PTO's regulations. 37 C.F.R. § 41.50 is a rule that applies for *ex parte* appeals—not appeals, like this one, involving *inter partes* reexaminations. *See* 37 C.F.R. Subpart B – Ex Parte Appeals (§§ 41.30-41.54). The analogous rule for *inter partes* reexaminations is 37 C.F.R. § 41.77, but section 41.77 includes no analogous provision allowing or requiring a party to challenge whether a Board decision should have designated rejection as a new ground of rejection. As such, Cisco's tacit acknowledgement that the Board's rejection was a new ground of rejection compels at least a remand.

In addition, as previously explained, the Board never explained how the combination of Kiuchi and Solana would have been combined in the new manner proposed in the final decision—namely, how Kiuchi's purported DNS request would or could have been incorporated into Solana system. VirnetX Br. 45-46. In response, Cisco argues that "VirnetX's brief to the Board did not identify the combinability of Kiuchi and Solana as an issue in dispute," Cisco Br. 33, but that ignores that VirnetX never was on notice of this new combination of Kiuchi and Solana. And on the substance, Cisco points only to the Board's observation that "both Kiuchi and Solana disclose secure communications." Cisco Br. 34 (quoting Appx28). But while this may go to why Kiuchi and Solana are in the same field, it lacks any detailed explanation of the *how* and *why* required for an obviousness analysis. VirnetX Br. 45-48.

### B. The Obviousness Rejections Based on a Combination of Kiuchi or Kiuchi and Solana with Other References Cannot Be Maintained.

The obviousness findings directed to claims 5-6, 8-9, and 18 as unpatentable for obviousness over Kiuchi, or Kiuchi and Solana, in combination with other references must be set aside for the same reasons as discussed for the rejections based only on Kiuchi, or Kiuchi and Solana. VirnetX Br. 48-49. Cisco does not disagree, and argues only that the Court should remand for consideration of other rejections. Cisco Br. 34-35.

## IV. THE APPOINTMENTS CLAUSE, *ARTHREX*, AND THE FVRA REQUIRE A REMAND TO A PERMANENT PTO DIRECTOR.

As VirnetX acknowledged in its opening brief, its challenge to Commissioner Hirshfeld's exercise of the Director's exclusive authority to issue final decisions on rehearing is currently foreclosed by this Court's decision in *Arthrex, Inc. v. Smith & Nephew, Inc.*, 35 F.4th 1328 (Fed. Cir. 2022), *reh'g en banc denied*, Docket No. 202 in No. 18-2140 (Fed. Cir. Aug. 11, 2022). *See* VirnetX Br. 50. VirnetX respectfully maintains its argument under the Appointments Clause, the Supreme Court's *Arthrex* decision, and the Federal Vacancies Reform Act of 1998 in order to preserve it for potential review by the Supreme Court or this Court en banc. *Id.*; *see also* PTO's Br. 4.

## CONCLUSION

The Board's decision should be reversed or, at a minimum, vacated.

Respectfully submitted,

Dated: October 7, 2022

/s/Naveen Modi

Naveen Modi
Joseph E. Palys
Stephen B. Kinnaird
Igor V. Timofeyev
Daniel Zeilberger
PAUL HASTINGS LLP
2050 M Street, N.W.
Washington, D.C. 20036
Tel.: (202) 551-1700

*Counsel for Appellant VirnetX Inc.*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

1. This reply brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32 and Federal Circuit Rule 32(b)(1).

The brief contains 5,211 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b).

2. This reply brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

The brief has been prepared in a proportionally spaced typeface using MS Word 2013 in a 14 point Times New Roman font.

Date: October 7, 2022 BY: /s/Naveen Modi

Naveen Modi
PAUL HASTINGS LLP
2050 M St., N.W.
Washington, D.C. 20036
Tel.: (202) 551-1700
Fax: (202) 551-1705